# FRANCIS SWIFT, RESPONDENT, *v.* THE STATE OF NEW YORK, APPELLANT.

*Contract—construction of the clause establishing the price to be paid—Right of the State board of audit to allow a claim which the State is morally bound to pay — when such an allowance is not an "extra compensation" — Const., art. 3, sec. 24 — Evidence — when a certified copy of the report of a State officer to the assembly is admissible.*

The plaintiff having submitted to the defendant proposals to furnish the materials and perform the labor required to erect a structure in New York harbor, at specific prices for specific quantities of the various kinds of materials and work to be furnished and performed, thereafter entered into a contract with the defendant whereby he agreed to erect the said structure for "the sum of two hundred and fifty-two thousand four hundred and ninety-one dollars and sixty-eight cents, being the aggregate cost of the construction of said exterior walls and foundation, at the prices specified in said proposals." The plaintiff completed the work and thereafter, claiming that the cost of the materials and labor furnished and performed at the prices specified in his proposals largely exceeded the contract price, applied to the Assembly and procured the passage of a resolution requiring the State engineer to make a survey and estimate of the materials used, and report the same to it. The engineer reported that the cost of the said work and materials at the prices specified exceeded the contract price by $39,375.12.

The plaintiff having presented his claim to the State board of audit, created by chapter 444 of 1876, and the board having audited his claim at the said sum of $39,375.12, this appeal was taken by the attorney-general, as authorized by the amendatory act, chapter 211, of 1881.

*Held,* that the statement of the aggregate cost of the work in the contract was only intended as an estimate, and did not conclude either party as to what the actual cost would be, it being intended to pay the specified prices for such materials and labor as should be actually furnished and performed.

That irrespective of the legal rights of the parties to the contract, the State was morally bound to compensate the plaintiff for the work done and materials furnished by him, and that the making of such compensation to him was not the granting of an "extra compensation" within the meaning of that term, as used in section 24 of article 3 of the Constitution.

That a copy of the report of the engineer to the Assembly, certified by the clerk of the Assembly, was properly received by the State board of audit, and was *prima facie* evidence of the quantity of work done and materials furnished.

That the audit by the board should be affirmed.

APPEAL from a decision of the State board of audit, awarding to the respondent Francis Swift the sum of $39,375.12.

The claim on which this award was made was for extra work and materials alleged to have been done and furnished by respondent in the erection of a structure, being an exterior wall and foundation, for quarantine purposes, on the west bank in the lower bay of New York, under a contract made in pursuance of chapter 751, Laws of 1866, entitled "An act in relation to quarantine in the port of New York, and providing for the construction of the permanent quarantine establishment."

The contract was made August 19, 1868, upon proposals submitted by Swift. He was to be paid "the sum of two hundred and fifty-two thousand four hundred and ninety-one dollars and sixty-eight cents, being the aggregate cost of the construction of said exterior wall and foundation, at the prices specified in said proposals."

On the 7th day of May, 1872, a resolution was procured to be passed by the assembly in the following words:

"*Resolved*, That the State engineer and surveyor be and he is hereby required to make a survey and estimate of the number of cubic yards of crib-work, stone, sand and other materials built, filled in, and furnished in the construction of Quarantine Island No. 2, in the lower bay of New York, under contract of August 10, 1868, between the Quarantine Contracting Board and Francis Swift, and report the same to the assembly."

In October, 1872, the deputy state engineer and surveyor went down to the island and commenced the work of making a measurement and continued the work, from time to time, for some six weeks.

The State engineer made up a report to the assembly, dated May 8, 1873, making the whole amount of work and material, at the detailed prices specified in the contract, amount to $304,218.57, or $39,375.12 in excess of the amount paid by the comptroller for the whole work, including extra work and materials.

In May, 1875, a concurrent resolution was passed in the following words:

"*Resolved*, (If the assembly concur), That the comptroller, State engineer and surveyor and the attorney-general, be appointed a board to examine into said claim, with instructions to report to the next legislature."

It does not appear that said board ever took any action under said resolution.

After March 1st, 1878, this claim was filed with the State board of audit.

*W. B. Ruggles*, deputy attorney-general, for the appellant.

*W. N. Dykman*, for the respondent.

GILBERT, J.:

The claim of Swift is not one for extra compensation, but is limited to the actual liability of the State for work and materials furnished by him pursuant to his contract. The basis of that contract was the proposal of Swift to do the work and furnish the materials at specified prices per cubic yard for one class of work, per running foot for another class, per square 100 feet for another class, etc. That proposal was duly accepted on behalf of the State. Presumably the contract was intended to be in all respects conformable to such proposal. Indeed, such proposal was in terms made a part of the contract. The contract also contains a stipulation on behalf of the State to pay to Swift the aggregate cost of the work and materials therein referred to at the prices specified in said proposal, and the amount thereof is stated at $252,491.68, whereas Swift claims and the board of audit decided that the true amount of such cost is $304,218.57. The statement of the aggregate cost of the work in the contract could have been nothing more than an estimate beforehand, and it did not therefore conclude either party as to the actual amount of such aggregate cost. The State did not become bound to pay any sum in excess of the amount of work actually done and the quantity of materials actually furnished, nor could it discharge its obligation under the contract by the payment of a less sum. But, irrespective of the strict rights of the parties to the contract, in law or equity there can be no doubt that the State is morally bound to compensate Swift for all the work done and materials furnished by him. The making of such compensation in the mode pursued, is not the "granting of any extra compensation" within the meaning of the inhibition contained in section 24 of article 3 of the Constitution. That provision was intended to prohibit gifts of public moneys by the legislature. We think it was not intended to take away the power of appropriating money for

the payment of claims against the State which upon an audit thereof had been ascertained to be just, although the claimant might have become disentitled, as a matter of strict right, to enforce his claim. On the contrary, we are of opinion that ample authority for the latter kind of appropriation is contained in section 19 of the same article. Taking these two sections together we think that it is quite plain that the legislature has plenary power to authorize and regulate by law the auditing of private claims of every description, and to provide means for the payment of such as shall have been audited according to law. Where the claim is one for extra compensation the legislature has no power to impart validity to it by a grant, or to satisfy it except by an appropriation of money, after the claim has been audited according to law. The distinction is between an arbitrary grant of public money and the appropriation thereof to the discharge of an established claim. Instances are constantly occurring where structures have been swept away by fire and storm, or the cost of them has been ruinously increased by a sudden inflation of prices consequent upon events which occurred after they had been begun. The sharing of such losses by employers with contractors is not infrequently done by private persons. It cannot be deemed incompatible with public duty. We think it was not the intention of the people in adopting the provisions referred to that the State should be shorn of the power of exercising the same liberality through its representatives under the safeguard of an audit.

We have not discovered any sufficient reasons for disturbing the conclusions of the board of audit. The report of the State engineer and surveyor shows with reasonable certainty that Swift had done work and furnished materials largely in excess of the quantity for which he had been paid. The accuracy of the report and the good faith with which it was made is satisfactorily proved by the verbal testimony of Cooper and Haswell, both of whom assisted in ascertaining the *data* from which the report was made. All of them were agents of the State, and they appear to have been governed by a desire to protect its interests.

That such report was *prima facie* evidence in favor of Swift we think admits of no doubt. (Code Civil Pro., § 933; 1 Greenl. Ev., § 483; Laws 1859, chap. 321, § 6.) It embodied the result of surveys, measurements and estimates ordered in the first instance by a

resolution of one branch of the legislature, which action was subsequently recognized and ratified by a concurrent resolution of both branches. The facts on which the board of audit made their decision were obtained in the only practicable way. The case affords no means of determining that such decision is erroneous.

The award must therefore be affirmed, with costs.

BARNARD, P. J., concurred; DYKMAN, J., not sitting.

Award by the State board of audit affirmed, with costs.